```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
                CORPUS CHRISTI DIVISION
```

|  |  |  |
|---|---|---|
| DAVID GONZALEZ, RENE CANTU, JOSUE MOSEVAISE | § § § § |  |
| Plaintiffs, | § § |  |
| vs. | § § | C.A. NO. C-06-352 |
| UNITED STATES OF AMERICA, | § § |  |
| Defendant. | § § § |  |

**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

On this day came on to be considered Plaintiffs' "Motion for Partial Summary Judgment" (D.E. 15). For the reasons discussed below, Plaintiffs' motion is DENIED.

**I.  JURISDICTION**

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1346(b)(1).

**II. BACKGROUND**

On August 11, 2006, Plaintiffs David Gonzalez, Rene Cantu, and Josue Monsevaise (collectively, "Plaintiffs") filed suit in this Court against the Defendant United States of America ("Defendant" or the "government"), pursuant to the Federal Tort Claims Act ("FTCA"). (Pl.'s Orig. Compl. ("POC") at ¶¶ 1-2, 10.)  In their Complaint, Plaintiffs alleged that, on June 6, 2005, an individual named George Anthony Farek ("Mr. Farek") negligently operated his motor vehicle and caused a collision with a vehicle occupied by the Plaintiffs.  (See POC at ¶¶ 8-12.)  Plaintiffs alleged that the

Defendant is liable for Mr. Farek's negligent conduct because Mr. Farek was an agent of the government at the time of the accident and was acting in the course and scope of his employment. (POC at ¶¶ 10, 12.) Plaintiffs sought damages from the Defendant for lost earnings and earning capacity, physical pain and impairment, and medical expenses. (POC at ¶¶ 13-15.)

On February 28, 2007, Plaintiffs filed a "Motion for Partial Summary Judgment" against the Defendant, arguing that there was no genuine issue of fact that Mr. Farek was acting as an agent and/or employee of the Defendant at the time of automobile collision. (See D.E. 15.) On April 2, 2007, Defendant filed a Response in opposition to the Plaintiffs' motion, arguing that summary judgment was improper because Plaintiffs had failed to meet their burden of conclusively establishing that Mr. Farek's was acting as an employee of the Defendant. (See D.E. 18.) For the purposes of Plaintiffs' motion, the following facts are not in dispute:

In 1981, the Caesar Kleberg Wildlife Research Institute of Texas A&M University ("CKWRI"), the South Texas Association of Soil and Water Conservation Districts, and the Soil Conservation Service of the United States Department of Agriculture entered into a "Memorandum of Understanding" concerning the establishment and operation of the South Texas Plant Materials Center (the "Center"). (Def.'s Ex. ("DEX") 1 at 1.)[1] The purpose of the Center was to

---

[1] The Memorandum of Understanding between the three entities was amended several times, in 1985, 1988, 1992, and 2000. (See DEX 2-5.)

improve the "well being of agriculture and the conservation of natural resources" in South Texas.  (DEX 1.)  Under the agreement, CKWRI and Texas A&M University-Kingsville[2] (the "University") agreed to: (1) make available up to 50 acres of University-owned land for use by the Center, (2) provide adequate office and laboratory space for use by Center personnel, (3) make personnel and equipment of the University farm available to the Center, and (4) share in the costs of operating the Center.  (DEX 1 at 2.)  The United States Department of Agriculture ("USDA"), on the other hand, agreed to: (1) provide technical assistance by providing an employee to be located at the Center to serve as manager and providing for his or her salary and travel and (2) providing technical expertise, reference material and other data needed to meet the objectives of the Center.  (DEX 1 at 2-3.)  The USDA also entered into a grant agreement with the University and CKWRI, under which the USDA agreed to provide financial assistance to the University in an amount not to exceed $75,000.00 per year and to reimburse for costs upon receipt and approval of a proper request.  (DEX 6-7.)

  At all times relevant to this case, Mr. Farek was employed as a "research assistant" by Texas A&M University-Kingsville and worked at the Plant Materials Center located on the Texas A&M University farm.  (DEX 13 at 7-10, 22.)  Although his salary was

---

[2] Texas A&M University-Kingsville was formerly known (and referred to in the agreements) as Texas A&I University.

paid by the University (DEX 13 at 22) and his duties included assisting University graduate students (DEX 13 at 64), Mr. Farek's immediate supervisor for much of his work was a federal employee: John Reilly (DEX 13 at 24, 27, 58-60; Pl.'s Ex. ("PEX") 2, 4).

On the morning of June 6, 2005, Mr. Farek had a discussion with a federal employee at the Center about obtaining a part for USDA plow located at the Center. (DEX 13 at 23, 27, 30-31.) Mr. Farek volunteered to go purchase the part from a store in Corpus Christi, Texas, and took a USDA vehicle from the Center to obtain the part. (DEX 13 at 11.) Mr. Farek intended to charge the cost of the part to a USDA charge account. (DEX 13 at 19-20.) As he was leaving the Center in the USDA vehicle, Mr. Farek was involved in an automobile accident with the Plaintiffs on FM 1355. (DEX 13 at 8; PEX 2, 3.) Following the accident, Mr. Farek filled out reports regarding the work-related incident for both the University and the USDA. (See DEX 13 at 48, 51, 55; PEX 2, 3.)

**III. DISCUSSION**

    **A.    Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Ellison v. Software

Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of [the record] which [he] believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the movant bears the burden of proof on a claim for which he is moving for summary judgment, the movant must come forward with evidence that establishes "beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in [his] favor." Fontenot v. UpJohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); Chaplin v. NationsCredit Corp., 307 F.3d 368, 372 (5th Cir. 2002). In other words, a plaintiff "cannot attain summary judgment unless the evidence that [he] provides on [his claims] is conclusive." Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998). A plaintiff's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the [plaintiff]," otherwise summary judgment cannot be granted. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986).

In conducting the summary judgment analysis, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable factfinder could return a verdict for that party. See, e.g., Anderson, 477 U.S. at 248; Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. Sch. Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996).

**B. Federal Tort Claims Act**

"[T]he United States, as sovereign, is immune from suits save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." See, e.g., United States v. Mitchell, 445 U.S. 535, 538 (1980); Hebert v. United States, 438 F.3d 483, 487 (5th Cir. 2006); Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998). Under the FTCA, however, the government has *waived* its sovereign immunity specifically for injuries that are:

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be

>liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); Bodin v. Vagshenian, 462 F.3d 481, 484 (5th Cir. 2006). Thus, by its own terms, the FTCA only waives sovereign immunity when the tortfeasor is an "employee of the Government" and commits the tort "while acting within the scope of his office or employment." Linkous, 142 F.3d at 275; Bodin, 462 F.3d at 484. The FTCA does not impose liability on the government for the acts of non-employees or independent contractors. Linkous, 142 F.3d at 275 ("The FTCA, however, does not extend to acts of independent contractors") (citing United States v. Orleans, 425 U.S. 807, 813-14 (1976)); see also Broussard v. United States, 989 F.2d 171, 174 (5th Cir. 1993)); 28 U.S.C. §§ 1346(b)(1), 2671. "The burden rests with the plaintiff to prove that under federal law, the negligent person was an employee of the United States." Duncan v. United States, 562 F.Supp. 96, 99 (D. La. 1983).

Under the FTCA, the phrase "employee of the government" is defined by statute to include persons who are:

>officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation . . . .

28 U.S.C. § 2671. Whether an individual is an "employee of the government" under the §§ 1346 and 2671 "is a question of federal law." See, e.g., Rodriguez v. Sarabyn, 129 F.3d 760, 765 (5th Cir. 1997) (citing Cavazos ex rel. Cavazos v. United States, 776 F.2d

1263, 1264 (5th Cir. 1985)). The "critical factor" in determining whether an individual is an employee of the government as opposed to a non-employee or mere independent contractor, "is the power of the federal government to control the detailed physical performance of the individual."[3] Linkous, 142 F.3d at 275 (citing Orleans, 425 U.S. at 814; Broussard, 989 F.2d at 174); see also Logue v. United States, 412 U.S. 521, 527 (1973)("[T]he distinction between the servant or agent relationship and that of independent contractor turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract"). Although "control" is the critical factor, it is not

---

[3] This "control" test applies even where a plaintiff claims to be an employee of the government by virtue of the second clause of § 2671, which includes in the definition of employees "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." See, e.g., Means v. United States, 176 F.3d 1376, 1380 (11th Cir. 1999) (stating that regardless of whether a person claims to be "acting on behalf of" the government, "the central jurisdictional question under the FTCA remains . . . the degree of physical control the government exercised") (citing Alexander v. United States, 605 F.2d 828 (5th Cir. 1979); Leone v. United States, 910 F.2d 46, 51 (2d Cir. 1990) (to hold that the "acting on behalf of" clause "provides for FTCA liability, when there is inadequate control or other indications of an employee relationship, would seriously undermine the FTCA's independent contractor exemption"); Carter v. Harris, 875 F.2d 314, 1989 WL 50254 at *1-2 (4th Cir. May 1, 1989) (unpublished) (noting that even where a plaintiff relies on the "acting on behalf of" language, the "the cases compel us to consider the degree of government control over [the tortfeasor's] performance"); Thompson v. Dilger, 696 F.Supp. 1071, 1075 (E.D. Va. 1988) ("Thus, Logue indicates that the inclusion of the 'acting on behalf of the Government' language does not detract from the central requirement of governmental supervision or control. Absent governmental authority to supervise or control a person's daily activities, that person cannot be an 'employee of the Government' under the FTCA"); see also Logue v. United States, 412 U.S. 521 (1973).

the *only* factor relevant to whether a person is a government employee. Rodriguez, 129 F.3d at 765; Broussard, 989 F.2d at 175. The Fifth Circuit has held that the Court may also consider several other factors listed in § 220 of the Restatement (Second) of Agency "to differentiate between an employee and independent contractor under the FTCA," including:

```
(a)   the extent of control which, by the agreement, the
      master may exercise over the details of the work;
(b)   whether or not the one employed is engaged in a
      distinct occupation or business;
(c)   the kind of occupation, with reference to whether,
      in the locality, the work is usually done under the
      direction of the employer or by a specialist
      without supervision;
(d)   the skill required in the particular occupation;
(e)   whether the employer or the workman supplies the
      instrumentalities, tools, and the place of work for
      the person doing the work;
(f)   the length of time for which the person is
      employed;
(g)   the method of payment, whether by the time or by
      the job;
(h)   whether or not the work is a part of the regular
      business of the employer;
(i)   whether or not the parties believe they are
      creating the relation of master and servant; and
(j)   whether the principal is or is not in business.
```

Linkous, 142 F.3d at 276; Rodriguez, 129 F.3d at 765; Restatement (Second) of Agency § 220(2). "If the government lacks the power to directly control an individual, then the court must look at other factors before deciding the individual's status as employee or independent contractor." Linkous, 142 F.3d at 276.

In this case, Plaintiffs have some evidence that Mr. Farek was acting as an agent or employee of the government at the time of the

accident. As the Plaintiffs note, Mr. Farek was (1) operating a USDA vehicle, (2) on route to pick up a part for a USDA plow, and (3) going to pay for the part using a USDA charge account. (See, e.g., DEX 13 at 11, 14, 18-20.) Plaintiffs also have some evidence tending to show that Mr. Farek was supervised by, and received most of his work-related instructions from, a federal employee for the USDA, Mr. John Reilly. (DEX 13 at 24.) Despite this evidence, however, Plaintiffs have not met their heavy burden of *conclusively establishing* that Mr. Farek was an agent of the government such that Plaintiffs are entitled to summary judgment. Torres Vargas, 149 F.3d at 29 (a plaintiff "cannot attain summary judgment unless the evidence that [he] provides on [his claims] is conclusive"). In other words, the Plaintiffs' evidence is not such that the trier of fact would be *compelled* to find for the Plaintiffs on this issue. Calderone, 799 F.2d at 259.

Defendant has presented evidence tending to show that Mr. Farek was not acting as an employee of the government at the time of the accident. In particular, Defendant has evidence that Mr. Farek was formally employed by the University and that his time and leave slips were processed and approved by University employees. (DEX 13 at 22, 64-65.) Mr. Farek testified that the University paid his salary and that he had never been paid by the government for any of his work related activities. (DEX 13 at 22.) Defendant also has evidence that Mr. Farek, in addition to being supervised

by a USDA manager, was also supervised by a University employee, Dr. Fred Bryant, the Director of CKWRI.  (See DEX 13 at 61; PEX 4 at 3.)  Although Mr. Farek was retrieving a part for a USDA plow at the time of the accident, there is evidence tending to show that the plow was not used exclusively by the federal government and may have also been used by University employees in their projects. (See DEX 13 at 20-21, 32.)  Moreover, according to Mr. Farek, his work-related duties at the Plant Materials Center included services on behalf of the University such as assisting University graduate students with their plantings, calibrating machinery for them, and helping them set up and get supplies.  (DEX 13 at 65.)  Finally, following the accident that is the subject of this case, Mr. Farek filled out a report regarding the work-related incident for the University, in addition to the report he completed for the USDA. (See DEX 13 at 48, 51, 55; PEX 2, 3.)  Viewing this evidence in the light most favorable to the Defendant, the trier of fact could reasonably find that Mr. Farek was an employee of the University, not the federal government, at the time of the accident.

The intertwined, and somewhat unclear, relationship between the government and the University with respect to the Plant Materials Center and individuals who work there, makes this issue inappropriate for resolution on summary judgment.  Indeed, in his deposition, Mr. Farek himself did not seem to know exactly whether the projects on which he worked were "government" projects or "University" projects or both:

> **Q.** Is the work done at the plant materials center a project of Texas A&M-Kingsville University?
> . . .
> **A.** I would assume a lot of those projects are joint projects, so its hard to--to say exactly, you know, who's all involved.

(DEX 13 at 64.) Likewise, Mr. Farek also testified that he often did not even know who was in charge of the projects:

> **Q.** And who is in charge of those projects?
>
> **A.** Again, on a lot of them I can't be sure because there could be, you know, joint projects or something like that. I don't know who is all involved in those specific projects. I don't have that information.

(DEX 13 at 66.) Considering this testimony, combined with the Defendant's evidence, the Court concludes that Plaintiffs have failed to demonstrate beyond "all peradventure" that Mr. Farek acted as an employee of the government. Accordingly, Plaintiffs' Motion for Partial Summary Judgment is DENIED.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' "Motion for Partial Summary Judgment" (D.E. 15) is DENIED.

SIGNED and ENTERED this 5th day of July, 2007.

_____
Janis Graham Jack
United States District Judge